**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-26-00159-CR**
**NO. 09-26-00167-CR**

_____

**EX PARTE NEREYDA TREVINO**

_____

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause Nos. F13-16456-A and F13-16658-A**

_____

**MEMORANDUM OPINION**

Nereyda Trevino filed applications for writ of habeas corpus pursuant to article 11.072 of the Texas Code of Criminal Procedure, asking the trial court to reverse the judgments against her in trial cause numbers F13-16456 and F13-16658.[1]

---

[1] The district clerk assigned "-A" ancillary cause numbers to Trevino's applications seeking habeas relief; thus, cause number F13-16456-A was assigned to Trevino's challenge to the judgment rendered in cause number F13-16456 and cause number F13-16658-A was assigned to Trevino's challenge to the judgment rendered in cause number F13-16658. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 4(b).

1

*See* Tex. Code Crim. Proc. Ann. art. 11.072. Trevino argues in her applications for writ of habeas corpus that the trial court should reverse the judgments against her because her pleas of guilty were the result of ineffective assistance of counsel and therefore were not entered into freely or voluntarily. Trevino asserts that her counsel was ineffective because (1) he failed to properly advise Trevino concerning the immigration consequences of her plea, and (2) also he represented the co-defendant and "labored under an actual conflict of interest" that adversely impacted Trevino's case. On appeal, Trevino argues that the habeas court abused its discretion in failing to hold an evidentiary hearing on her applications for habeas relief and in denying Trevino's conflict-of-interest claim. We affirm the trial court's order.

## Background

Trevino was indicted for possession of a controlled substance (cocaine), a second-degree felony, in cause number F13-16456. Trevino was also indicted for delivery of a controlled substance (cocaine), a second-degree felony, in cause number F13-16658. In 2013, Trevino pleaded guilty to both charges. The trial court deferred adjudication of guilt and placed Trevino on community supervision for five years in each case. In 2018, both deferred adjudication community supervisions were terminated and both cases were dismissed.

The Habeas Proceeding[2]

On December 4, 2025, Trevino filed an Application for Writ of Habeas Corpus ("Application") pursuant to article 11.072 in each of the two cause numbers. In her Application, Trevino asserts that her trial counsel was ineffective under the Sixth Amendment of the United States Constitution and article 1, section 10 of the Texas Constitution, because he failed to properly advise Trevino about the immigration consequences of the State's plea offer. As to her conflict-of-interest claim, Trevino alleges that her right to due process and right to counsel were violated because her attorney represented a co-defendant and "labored under an actual conflict of interest that adversely impacted her case." According to Trevino, under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), she was not required to object at trial in order to retain her argument that her attorney had an actual conflict of interest which adversely affected counsel's performance. Trevino asserted in her Application for Writ of Habeas Corpus in each case that her trial counsel, Dorian Cotlar, also represented Trevino's co-defendant and partner at the time, Ruperto Camargo, who

---

[2] Trevino's issues on appeal only complain that the habeas court erred by not holding an evidentiary hearing and in the denial of Trevino's conflict-of-interest claim , so we only generally address her other complaints as necessary to resolve the two stated issues on appeal. *See* Tex. R. App. P. 47.1. Also, based on our disposition we do not reach the laches defense raised by the State in its Answer and on appeal. *See id.*

was arrested alongside Trevino and indicted the same day as Trevino for the offense of possession of cocaine, arising out of the same alleged conduct for which Trevino was indicted. Trevino alleges:

> An actual conflict existed in this case because Mr. Cotlar compromised his duty of loyalty to Ms. Trevino. First, Mr. Co[tl]ar did not inform Ms. Trevino of the conflict of interest or the legal implications of him representing both her and her co-defendant, Mr. Camargo. Additionally, Mr. Cotlar, representing both Ms. Trevino and Mr. Camargo, advanced arguments in the cases that caused Ms. Trevino to plead guilty in order for Mr. Camargo's charges to be dismissed.
>
> Ms. Trevino and Mr. Camargo traveled together to Mr. Cotlar's office to seek representation for their cases. Mr. Cotlar met with them together, and a member of his office or a third party served as translator. He did not explain to either potential client the risks or legal implications of the joint representation. He did not seek informed consent from both potential clients, but accepted dual representation regardless. Ms. Trevino's daughter even inquired about possible issues with joint representation, and was told it would not be a problem. Ms. Trevino recalls being informed by her attorney that the weight of the evidence was against her, two people could not have the same charge, and that she should just accept the offer of a guilty plea and probation.
>
> Additionally, an actual conflict exists because Mr. Camargo stood to gain significantly by counsel advancing plausible arguments that were damaging to Ms. Trevino's cause. Ms. Trevino and Mr. Camargo were named alongside each other as suspects in a single narcotics search warrant for a residence. *See* Appendix F. Ms. Trevino and Mr. Camargo were both found in the home and were arrested on suspicion of possession of various bags of cocaine found in the home. *See Id.* The Case Supplemental Report of October 3, 2012 asserts that both Ms. Trevino and Mr. Camargo were found by detectives in the residence, and police found probable cause to believe both were in possession of a controlled substance. *See Id.*
>
> Mr. Camargo's dismissal paperwork reflects the degree to which he stood to gain from Mr. Cotlar's presentation of evidence and arguments adverse to Ms. Trevino's case. He was called for only two court hearings, and on the second court date his charges were dismissed at the State's motion. *See* Appendix C. The sole reason for dismissal

4

stated in the State's Motion to Dismiss is that his co-defendant was sentenced, with the cause numbers for both of Ms. Trevino's cases (13-16658 and 13-16456) included. *See Id.*

This conflict of interest had an actual and adverse effect on Mr. Cotlar's performance in representing Ms. Trevino's interests. Instead of advocating for Ms. Trevino's interests, Mr. Cotlar advanced arguments that wholly shifted the blame to Ms. Trevino so that her co-defendant's case would be dismissed. Mr. Cotlar represented two defendants charged with the same crime and whose cases were related, whose arguments reasonably may have been that the other was the one in possession of the controlled substance. Mr. Cotlar told the defendants that this would not cause issues with his representation, but outwardly subordinated Ms. Trevino's interests in favor of Mr. Camargo's and urged her to take a plea to her detriment and Mr. Camargo's benefit.

Because Ms. Trevino has established an actual conflict that adversely affected counsel's performance, prejudice is presumed with no further inquiry under the *Cuyler* standard. Ms. Trevino's guilty plea should be set aside and this case returned to the trial docket.

Trevino also alleges that her trial counsel was ineffective because he was aware of her immigration status, and she says she never learned from any source that her plea of guilty, even to deferred adjudication, could have serious and lasting immigration consequences or that she would be deported. According to Trevino, her attorney informed her that she would not have issues with her immigration status because of her guilty plea. Trevino argues that, because she was not properly advised about immigration consequences of her guilty plea, her plea was not knowingly and voluntarily entered into.

As exhibits to her Application for Writ of Habeas Corpus in each case, Trevino attached various documents, as well as her affidavit and her daughter's affidavit. She attached the deferred adjudication orders, the deferred adjudication

5

dismissal orders for the cases, the trial court's certification of her right to appeal, investigative reports, plea documents, the indictments, a letter from Cotlar to the Drug Impact Court confirming Cotlar's representation of Trevino and Camargo[3] in Drug Impact Court, the State's motion to dismiss and order dismissing Camargo's charge based on Trevino's sentencing, the reporter's records from Trevino's plea hearing and sentencing, and deportation documents. In Trevino's attached affidavit, she stated in relevant part:

> My name is Nereyda Trevino. I am of sound mind, 18 years of age or older, and competent to give this affidavit. I do not read or write English. This declaration is being prepared by my lawyer, and the document has been translated to me by my daughter, Jessica DeSantiago, who reads and speaks both English and Spanish.
>
> I was arrested in April of 2013 for possession of a controlled substance and delivery of a controlled substance. I bonded out on both charges. My partner at the time, Ruperto Camargo, was also arrested for the possession of a controlled substance charge. We were co-defendants. The delivery of a controlled substance charge was related to conduct which took place in March 2012, and the possession of a controlled substance charge was related to a search warrant executed at the house where I lived with Mr. Camargo in October of 2012.
>
> Mr. Camargo and I hired attorney Dorian Cotlar to represent both of us. Mr. Cotlar does not speak Spanish, and neither I nor Mr. Camargo could speak English. Mr. Cotlar used another person, over the phone, to translate for us. Mr. Cotlar did not discuss any problems with representing both Mr. Camargo and me at the same time. I signed a contract for Mr. Cotlar to represent me, but I do not know where the contract is located today. Mr. Cotlar never explained what a conflict of interest was to me.

---

[3] In some documents in the record, Camargo is referred to as "Camarco."

At this time, I was a legal permanent resident. Mr. Cotlar knew I was not a citizen of the United States.

I remember going to Court three times. I believe Mr. Cotlar was there each time, but I am not positive he was present the last time, when I was sentenced to probation. On the day I pleaded guilty I discussed the guilty plea with Mr. Cotlar. There was another attorney there who spoke Spanish, who helped to translate for us. Mr. Cotlar told me Mr. Camargo did not have a lot of evidence against him, and that someone needed to accept the charges. I was told if I accepted the charges Mr. Camargo's case would be dismissed. I would get five years of probation, and that the probation would be moved to Harris County, where I lived. It was explained to me that two people could not have the same charge, and someone needed to take the charge.

I remember signing paperwork for the guilty plea, but I do not remember going over the paperwork in detail. I was never told that if I pleaded guilty to these charges, then I would be deported. I did ask Mr. Cotlar about my immigration status, and he said I would not have any problems with my immigration status if I pleaded guilty. I think this was after I signed the paperwork, but before I was sentenced to probation. After I pleaded guilty Mr. Camargo's case was dismissed.

In 2013, after I pleaded guilty, I was arrested by immigration officials and I was removed from the country. After I was arrested, I agreed to deportation. Had I known that pleading guilty to these crimes would lead to my deportation, it is my belief I would not have pleaded guilty. It is my understanding that my cases would have been difficult to defend at trial, and that if I lost on the cases I could have been sentenced from probation to 10 years in prison for the first offense, and from probation to twenty years on the second case. However, being able to remain in the United States was so important to me that I believe I would have risked going to trial if there was any chance I could stay in the United States. I wanted to remain in the United States because all of my children live here.

. . . .

I have read the above statement consisting of 3 page(s), which is based on my personal knowledge, and it is true and correct.

7

In Trevino's daughter's affidavit, she testified to the following:

My name is Jessica Trevino DeSantiago. I am of sound mind, 18 years of age or older, and competent to give this affidavit.

I am Nereyda Trevino's daughter. . . . I have reviewed the foregoing document with my mom, faithfully translating from Spanish to English. My mom agreed that everything in the foregoing document was true and correct.

I also spoke with Mr. Cotlar while my mom's criminal case was pending. I did ask him at one point if he could represent my mom and Mr. Camargo if they were both charged with the same crime. Mr. Cotlar told me he believed that the charges were not valid or strong and that he could help them both without any issues. Mr. Cotl[a]r mentioned if something came up he would let us know but that never happened. He just told us he was always trying to help them both and resolve this case in the best way.

Before my mom was sentenced, I talked with Mr. Cotlar about whether the guilty pleas would affect my mom's immigration status. He told me that he did not think so because it never came up when he was making the deal with the prosecutor and that as soon as she signed it would all be over and she would get probation and do the community service and not have any problems. I mentioned to him again that she was a resident and that we were scared that she might have immigration issues and he said she should not [] be worried. He mentioned that accepting the pleas was the best outcome for everyone and for it to all be over for her. He mentioned that Mr. Camargo could not accept any charges because all the evidence was against my mother. He mentioned they had incriminating audio and therefore she had to plead guilty and accept the pleas for this to be over so she could move on with her life.

I have read the above statement consisting of 3 page(s), which is based on my personal knowledge, and it is true and correct.

8

The State filed its Answer to each of Trevino's Applications for Writ of Habeas Corpus and asserted a general denial and argued that Trevino's claims are barred by laches.

"In an attempt to develop all the necessary facts to resolve" Applicant's ineffective assistance and conflict of interest allegations, the trial court ordered Trevino's trial counsel for the two cause numbers, as well as Trevino's interpreter in the two cause numbers, to file an affidavit with any relevant facts and pertinent evidence that would "shed light on the credibility of Applicant" and her allegations in her Application for Writ of Habeas Corpus in each case.

In his affidavit, Cotlar provided the following testimony in pertinent part:

> "My name is Dorian C. Cotlar. I am over the age of eighteen and capable of making this affidavit. I was retained counsel for Nereyda Trevino's ('Applicant') felony cases in the 252nd District Court in 2013.
> "I will provide the Court some background and then respond to the issues raised in the Application.
> 1. "I have been licensed to practice law in Texas since November of 2001. I am Board Certified in Criminal Law by the Texas Board of Legal Specialization. I am also Martindale-Hubbell AV Rated (Preeminent) in both the Peer Review and Judicial Editions.
> 2. "My entire career has been devoted to criminal law – both as a prosecutor and a criminal defense attorney. I was a Harris County ADA from 2001-2006. I entered private practice in 2006 and practiced solely criminal defense until October of 2021. In addition to a robust private practice, I was First-Degree/Capital-Certified in Harris County and was on the Federal Criminal Justice Act (CJA) Panels for indigent defendants in both the Southern and Eastern Districts of Texas.

9

"In November of 2021, I returned to the public sector. I am now employed as an Assistant Attorney General (AAG) by the Texas Office of the Attorney General. I am a team supervisor in the Criminal Prosecutions Division.

"I have handled thousands of criminal cases on both sides of the bar. I have tried nearly 200 criminal cases to a jury in both State and Federal court – nearly all those felonies. I am a regular presenter at CLEs for both the defense bar and prosecutors.

3. "Although I no longer have any files related to this case from thirteen years ago, I remember the Applicant's case very well. In preparing this affidavit, I reviewed the Writ Application which contains portions of the offense reports. I have also discussed this case with my co-counsel at the time, William R. McLellan. Mr. McLellan speaks fluent Spanish and is certified by the courts in Harris County to provide representation to Spanish-speaking defendants.

4. "In 2013 I was given all discovery for both Ms. Trevino's cases. This included *video* footage of Ms. Trevino selling cocaine to a confidential informant ("CI"). At that time, the Jefferson County District Attorney's Office did not have a discovery portal. All the evidence was in "hard copy" form. Therefore, I did not make an electronic file which would possibly still be retained.

INEFFECTIVE ASSISTANCE OF COUNSEL

5. "In 2013, plea paperwork in Jefferson County (as well as most other counties in Texas) included language that a plea of guilty "may result in deportation, exclusion from admission or denial of naturalization[."] However, conscientious practitioners (me included) went beyond that in the post-*Padilla* Era. I told Ms. Trevino several times that she *would* be deported upon a plea of guilty or conviction after a bench or jury trial. Those were difficult conversations to have and took place after we had reviewed all the evidence together. I never spoke to Ms. Trevino without an interpreter present despite her having a good command of English.

6. "Ms. Trevino initially told me that she was not guilty and that the State had no evidence against her. Once we reviewed the evidence her tune changed, and we were in 'damage control' mode. On the delivery case (March of 2012), the entire transaction was on *video* (not just audio as the Application incorrectly states).

10

7. In the case that originated from the execution of the search warrant (October of 2012), the cocaine was found in Ms. Trevino's shorts. It was packaged in 21 small baggies. And while this will be discussed below, it should be noted that Mr. Camargo neither wore Ms. Trevino's clothing nor was present when she sold cocaine to a CI. Ms. Trevino was adamant that Mr. Carmago had nothing to do with her illicit activities. While I would not normally take a client's word in that respect, the evidence clearly supported her contention that Mr. Carmago was not involved.

8. "The evidence against Ms. Trevino was overwhelming. I explained to Ms. Trevino that even on a deferred, she was going to get deported but that she would not be going into immigration custody immediately given her status as a Lawful Permanent Resident (LPR) who was on bond. I also referred her to a Houston immigration attorney named Abraham Galaviz.

9. "My client's affidavit is replete with lies, but there are some kernels of truth on which the Court should focus. She states that her cases "would have been difficult to defend at trial[.]" *Applicant's Affidavit at 2*. That is a monumental understatement. She was indicted on both a 2nd and 3rd degree felony. (Notably, she was not indicted on two State Jail felonies as her sworn-to Application states.) She also fails to mention that the State threatened to re-indict with a Drug Free Zone enhancement because the residence was located within 1000 feet of a park. This would have added five years to the minimum sentence should she have been convicted and assessed a prison sentence. My (difficult) conversation with Ms. Trevino was no different than conversations that I had with many other clients (before and after Ms. Trevino): You're going to get deported. But do you want to go to prison and *then* get deported or just avoid the prison part?'

10. "I am in possession of an affidavit filed by Ms. Trevino's daughter, Jessica. Like her mother's, her affidavit is almost entirely false yet sprinkled with some elements of truth. She avers that I 'did not think' that her mother would be deported because 'it never came up when [I] was making the deal with the prosecutor.' *Jessica Trevino DeSantiago's Affidavit at 1*. There is no universe where a Jefferson County Assistant District Attorney would have any say whatsoever in the decision about whether to deport an LPR. She is correct that I advised Ms. Trevino to plead

guilty. This was to avoid the risk of a custodial sentence prior to her inevitable deportation.

11. In summary, Ms. Trevino was told that she was going to be deported because she was pleading guilty to felony Possession of a Controlled Substance. I even explained that there was no 'carve out' for less than 30 grams of cocaine like there was for less than 30 grams of marihuana.

CONFLICT OF INTEREST

12. "The Application asserts that I 'labored' under an actual conflict of interest. This is ostensibly due to filing a letter of representation for both Ms. Trevino and Ruperto Carmago (whose single case was ultimately dismissed).

13. "When Trevino and Camargo called me for a telephone consult (this is the call to which Ms. Trevino's daughter is referring), I told them that I would not represent both of them due to a potential conflict. As they were in Beaumont and I was in Houston, they requested to come to my office to meet in person. I made sure to have a Spanish-speaking attorney (William R. McLellan) present. The agreement that I made with them was that I would 'sign on' to both cases, but that if it appeared that a conflict arose, I would withdraw from Mr. Camargo's case. The fee that I quoted was just for Ms. Trevino. I explained that I did not want to charge them money for both defendants if I was not going to be able to see both cases through to completion. Finally, I had them sign a waiver of conflict. These events are very salient because at that point, I do not believe I had ever represented co-defendants.

14. "Jessica Trevino's affidavit states that I said, 'if something came up [I] would let [them] know but that never happened.' That is an accurate statement that proved prophetic. Nothing 'came up' because there was no evidence whatsoever against Mr. Camargo other than him being 'merely present' when the warrant was executed in October of 2012. As the discovery was obtained, it was learned that Ms. Trevino was the subject of a months-long narcotics investigation. (She sold to a CI in March of 2012 and a search warrant was executed in October of 2012 where 21 small bags of cocaine were found in her shorts.) In the end, the person who sold cocaine to the informant (on video) was Ms. Trevino. The shorts where the drugs were found when the search warrant was executed belonged to Ms. Trevino.

12

15. There were never discussions with either Trevino or Camargo which would have created any conflict. No information was obtained from either of them to the detriment of the other. My memory is that from the earliest conversations with the State, they were going to dismiss the case against Mr. Camargo. My representation of Mr. Camargo had no adverse impact on my representation of M[s]. Trevino or vice versa. There were no divergent or competing interests between Mr. Camargo and Ms. Trevino.

16. To summarize:
   a. There was no evidence against Mr. Camargo other than him being present when the search warrant was executed in October of 2012.
   b. Ms. Trevino was the subject of a months-long narcotics investigation by the Beaumont Police Department.
   c. Ms. Trevino was on video selling to an informant on one occasion and on another, 21 small bags of cocaine were found in the pocket of shorts belonging to her.

McLellan in his affidavit testified as follows:

1. "My name is WILLIAM R. MCLELLAN, JR. I am over 18 years of age, of sound mind, and fully competent to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct."

2. "I am a licensed attorney in good standing with the State Bar of Texas (Bar No. 24029719) since 2000. However, for the purposes of the proceedings held in Jefferson County in 2013 regarding the above-styled cause, I appeared **solely** in the capacity of a Spanish Language Interpreter."

3. "I am Certified in the Spanish Language, through the Harris County felony appointment procedure, as well as the Harris County Managed Assigned Counsel Caseload for misdemeanors."

4. "My role in this particular matter was strictly limited to providing a true and accurate interpretation between the English and Spanish languages for **Attorney Dorian Cotlar and Ms. Trevino**. All matters were interpreted accurately, succinctly, and with complete understanding of both parties."

5. "I was present when Mr. Cotlar reviewed the discovery with Ms. Trevino. Given the video recorded evidence, Ms. Trevino decided

13

that she did not want to risk going to trial. In 2013 (as now), most of my clients were Spanish-speaking. A great many of them were/are not United States Citizens. Mr. Cotlar explained the immigration consequences of a plea to Ms. Trevino, and I translated.

6. "On the morning of the plea, the Court asked me to stand in for the plea so that I could translate for Ms. Trevino. Outside of that, I did not provide legal advice, participate in legal strategy, or otherwise engage in the practice of law during these proceedings."

On March 9, 2026, the district court signed an order denying Trevino's Application for Writ of Habeas Corpus in each case and included the following pertinent findings of fact and conclusions of law:

**FINDINGS OF FACT AND CONLUSIONS OF LAW**

[] There is at least one significant distinction between an article 11.07 habeas case and an article 11.072 habeas case. In an article 11.07 habeas case, the Court of Criminal Appeals is the ultimate finder of fact; the trial court's findings are not automatically binding, although they are usually accepted if they are supported by the record. In an article 11.072 habeas case, however, the trial judge is the sole finder of fact. *Ex parte Garcia*, 353 S.W.3d 785, 787-788 (Tex. Crim. App. 2011).

**A. The Applicant's Evidence before the Court**
[] Applicant presented her sworn factual assertions for the Court's consideration in an affidavit attached to her Habeas Corpus Application. Her statement is consistent with [her three grounds for relief alleged – ineffective assistance of counsel for failure to properly advise of immigration consequence from pleading guilty, counsel labored under an action conflict of interest by dual representation without full disclosure to Applicant, and Applicant's plea was involuntary due to counsel's alleged failure to properly advise her of immigration consequences to pleading guilty.]
[] Applicant also attached a sworn affidavit from her daughter Jessica Trevino DeSantiago consistent with Applicant's claims.
[] This Court notes that an Applicant's self-serving claim, without supporting proof, is insufficient. It is the Applicant's burden of proof to prove her habeas corpus allegations. *Ex parte Rains*, 555 S.W.2d 478,

14

481 (Tex. Crim. App. 1977); *Ex parte Sandavol*, 508 S.W.3d 284, 286 (Tex. Crim. App. 2016) (citing *Ex parte Whisenant*, 443 S.W.3d 930, 932 (Tex. Crim. App. 2014)). An Applicant's sworn allegations alone are insufficient to prove an Applicant's claims. *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

[] Sworn pleadings must be substantiated by the record in order for relief to be granted. *Garcia*, 353 S.W.3d at 789 (construing *Ex parte Evans*, 964 S.W.2d 643 (Tex. Crim. App. 1998).

## B. Live Evidentiary Hearing not Necessary; Hearing by Attorney Affidavit Conducted

[] Applicant did not allege any extra-record evidence. Accordingly, no live evidentiary hearing is necessary. *See Ex parte Davila*, 530 S.W.2d 543, 545 (Tex. Crim. App. 1975).

[] However, this Court ordered trial counsel to respond to Applicant's claims regarding conflict of interest and ineffective assistance of counsel resulting in an involuntary plea.

[] Counsel Cotlar timely filed his affidavit noting his detailed experience and certifications. Cotlar affidavit, P. 1, ¶ 1-2. Concerning counsel's credibility[], it is noted that Affiant is an officer of the court, and a duly deputized Assistant Attorney General for the State of Texas. This Court is not aware of any disciplinary history with the State Bar of Texas. Although this Court has no personal recollection of Attorney Cotlar to assist in making this credibility decision, this Court nevertheless does not believe Applicant's factual claims over the reasonable assertions Cotlar makes in his affidavit.

[] Attorney Cotlar noted that the apparent conflict was covered by a written waiver (now destroyed pursuant to his firm's file retention policy), and that in any event, the apparent or potential conflict never amounted to an actual conflict of interest. Cotlar affidavit, P. 5-6. This is because, he claims, Applicant was the only individual on video to be seen selling drugs to a confidential informant, and that after a six month undercover drug investigation. He claims that the evidence of Applicant's guilt was overwhelming. Whereas the only evidence against the alleged co-defendant was that he was present when the search warrant was executed and 21 small baggies of drugs were found in Applicant's shorts. Cotlar affidavit, P. 2-6.

. . . .

[] Attorney William R. Mc[L]ellan, Jr. also provided an affidavit. Therein, he asserts that he was **"solely"** a Spanish language interpreter

15

for attorney Cotlar to facilitate the taking of Applicant's plea of guilty. Mc[L]ellan affidavit P. 1, ¶ 2-4 (emphasis in original). From the totality of the written record, the reporter's record from the plea proceedings, and Applicant's specific factual assertions in her writ application, it is clear that she has directed her complaints toward retained counsel Dorian Cotlar, and not Spanish language speaking interpreter (and licensed attorney) assisting at the plea proceeding, William McLellan. Cotlar's affidavit addresses all of Applicant's grounds. Applicant asserts and retained counsel Cotlar claims full control of the client representation. This Court has no reason to doubt Mc[L]ellan's assertions, which are supported by the record. Thus, this Court deems those assertions to be true.

[] Attorney Mc[L]ellan also had additional factual observations to which he attested. He opined that whilst translating Spanish and English, that "all matters were interpreted accurately, succinctly, and with complete understanding of both parties." Mc[L]ellan affidavit P. 1, ¶ 4.

[] "I was present when Mr. Cotlar reviewed the discovery with Ms. Trevino. Given the video recorded evidence, Ms. Trevino decided that she did not want to risk going to trial. . . .

[] On the morning of the plea, the Court asked me to stand in for the plea so that I could translate for Ms. Trevino. Outside of that, I did not provide legal advice, participate in legal strategy, or otherwise engage in the practice of law during these proceedings." Mc[L]ellan affidavit P. 2, ¶ 6.

(footnotes omitted). In denying Trevino's relief, the trial court's order stated the

following:

[] On the one hand, you have Applicant's self-serving affidavit with tangential support of her daughter's affidavit, and on the other hand, you have defense counsel's and the interpreter's thorough and detailed affidavits. Both assertions of fact are diametrically opposed.

[] Being extremely generous, at the very best, the scales are balanced. But that is not enough, and certainly not on the evidence presented herein. Applicant has the burden to tip the scales, ever so slightly, in her favor. That she has not done to the satisfaction of this Court.

16

[] Accordingly, Applicant has not sustained her burden of proof or production.

[] Therefore, it is the opinion of this Court that Applicant has failed to sustain her burden and that, therefore, all relief requested is DENIED.

The habeas court in its findings determined that although the State's laches claim was "well-founded[,]" it was not necessary for the habeas court to reach that claim because the trial court instead decided the case "on the merits due to assertions of fact based on the totality of the affidavits as a whole." Trevino appealed. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 8.

Standard of Review

An applicant seeking post-conviction habeas corpus relief bears the burden of establishing by a preponderance of the evidence that the facts entitle the applicant to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In reviewing the trial court's denial of a habeas petition, we "must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003)). A trial court abuses its discretion if it acts "arbitrarily, unreasonably, or without reference to the guiding principles of law in the case[,]" but does not abuse its discretion so long as its ruling lies within "the zone of reasonable disagreement." *See Ex parte Gallow*, 602 S.W.3d 605, 608-09 (Tex. App.—Beaumont 2020, no pet.)

17

(citations omitted). In reviewing an appeal from a habeas court, we afford almost total deference to the habeas court's factual findings if supported by the record. *See State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013). When the habeas court has resolved the habeas proceedings based on a factual dispute turning on the habeas court's evaluation of the credibility and demeanor of witnesses, even if no witnesses testify and all evidence is submitted through affidavits, an appellate court will not overturn the court's ruling unless the applicant established that the habeas court abused its discretion in reaching its findings. *Id.*; *see Ex parte Wheeler*, 203 S.W.3d 317, 325-26 (Tex. Crim. App. 2006) ("[R]eviewing courts defer to the trial court's . . . factual findings that are supported by the record, even when no witnesses testify and all of the evidence is submitted in written affidavits."). With respect to the resolution of fact questions in article 11.072 habeas appeals, "the trial judge is the sole finder of fact." *See Ex parte Garcia*, 353 S.W.3d at 788. "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted" by the reviewing court. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (citing *Ex parte Evans*, 964 S.W.2d at 648; *Ex parte Jarrett*, 891 S.W.2d 935, 940 (Tex. Crim. App. 1994)).

Evidentiary Hearing

In her first issue, Appellant argues the habeas court abused its discretion by failing to conduct an evidentiary hearing. Article 11.072 does not require the habeas

18

court to resolve any factual disputes by holding a hearing. *See* Tex. Code Crim. Proc. Ann. art. 11.072, §§ 6(b)-(c), 7(a). This Court has reiterated on numerous occasions that article 11.072 does not require the habeas court to resolve any factual disputes by holding a hearing. *See, e.g.*, *Ex parte Aguil*, No. 09-25-00339-CR, 2026 Tex. App. LEXIS 4675, at *13 (Tex. App.—Beaumont May 20, 2026, no pet.) (mem. op., not designated for publication); *Ex parte Arjona*, 402 S.W.3d 312, 319 (Tex. App.— Beaumont 2013, pet. ref'd); *Ex parte Franklin*, 310 S.W.3d 918, 922 (Tex. App.— Beaumont 2010, no pet.). Article 11.072 provides that "the trial court *may* order affidavits, depositions, interrogatories, *or* a hearing, and *may* rely on the [trial] court's personal recollection. Tex. Code Crim. Proc. Ann. art. 11.072, § 6(b) (emphasis added). The statute's permissive construction means that a hearing is not required. *See Ex parte Davila*, 530 S.W.2d at 545; *see also Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) ("While section 6(b) clearly indicates that in making its determination the trial court *may* order affidavits, depositions, interrogatories, or a hearing, it does not *require* that the trial court do so.").

Appellant contends that when, as here, the habeas court has no personal recollection of the proceedings and the affidavits presented by the parties are "diametrically opposed[,]" a hearing is required. According to Appellant, the habeas court's failure to hold a hearing under the circumstances here is inadequate under *Ex*

*parte Davila* and inconsistent with this Court's holdings in *Ex parte Arjona* and *Ex parte Cherry*. *See Ex parte Davila*, 530 S.W.2d at 545; *Ex parte Arjona*, 402 S.W.3d at 319-20; *Ex parte Cherry*, 232 S.W.3d 305, 307 (Tex. App.—Beaumont 2007, pet. ref'd). We disagree.

In *Ex parte Arjona*, this Court noted that an appellate court may remand a habeas proceeding to the trial court if the factual record has not been sufficiently developed, and we determined that under the circumstances in that case that an opportunity for further development of the habeas corpus record was required. 402 S.W.3d at 319-20. That said, in *Ex parte Arjona*, this Court also noted that "Article 11.072 does not require a hearing when the issues can be resolved without one." *Id.* at 319 (citing Tex. Code Crim. Proc. Ann. art. 11.072). Similarly, in *Ex parte Cherry*, we reversed and remanded the habeas court's ruling for further proceedings because the information before the habeas court in that case, when considered with that court's findings, did not allow this Court "to accurately identify the basis of [the habeas court's] ruling." 232 S.W.3d at 307. As we explained in our decision in *Ex parte Watson*, "[a]lthough we remanded *Cherry* to allow the habeas court to conduct further proceedings, we did not mandate that the habeas court conduct a formal evidentiary hearing on remand; instead, we left the manner in which the record should be further developed to the habeas court's discretion." No. 09-15-00333-CR, 2016 Tex. App. LEXIS 2460, at *36 (Tex. App.—Beaumont Mar. 9, 2016, pet. ref'd)

20

(mem. op., not designated for publication) (citing *Ex parte Cherry*, 232 S.W.3d at 308).

Trevino has provided no legal authority, nor are we aware of any, mandating that a habeas court conduct a live hearing when presented with what Trevino characterizes as "conflicting affidavits" or when the habeas court lacks personal recollection. We further note that in *Ex parte Walker*, Walker argued that the trial court erred when it did not hold a hearing to resolve conflicts in the evidence presented with the habeas application. No. 09-24-00123-CR, 2025 Tex. App. LEXIS 2202, at *17 (Tex. App.—Beaumont Apr. 2, 2025, pet. ref'd) (mem. op., not designated for publication). In determining that the trial court did not abuse its discretion in not holding an evidentiary hearing, this Court explained:

> Although Walker claims that he was entitled to an evidentiary hearing, article 11.072 does not require the trial court to hold any hearing before rendering its decision. *See Ex parte Franklin*, 310 S.W.3d [at] 922-23 [] (holding that trial court is not required to hold oral hearing when determining whether to deny habeas application alleging ineffective assistance of counsel); *see also Ex parte Godinez*, No. 10-13-00063-CR, 2014 Tex. App. LEXIS 256, [] at *[4] (Tex. App.—Waco Jan. 9, 2014, pet. ref'd) (mem. op., not designated for publication) (stating that article 11.072 does not require court to hold evidentiary hearing). The trial court may consider affidavits attached to an application as evidence without a hearing. *See Ex parte Cummins*, 169 S.W.3d [at] 757 []. Since the statute does not require a hearing, the trial court's decision to rule based on the submitted affidavits and evidence did not violate Walker's due process rights. *See In re Pesina*, No. 07-15-00380-CR, 2016 Tex. App. LEXIS 858, [] at [**6-7] (Tex. App.—Amarillo Jan. 27, 2016) (mem. op., not designated for publication) (article 11.072 provides a variety of ways for a court to reach a decision and no due process violation is shown simply because

21

the trial court did not hold an evidentiary hearing); *Ex parte Hollowell*, No. 03-11-00240-CR, [2012 Tex. App. LEXIS 4394, at **17-18] (Tex. App.—Austin June 1, 2012, pet. ref'd) [(mem. op., not designated for publication)] (overruling due process challenge because article 11.072 does not require a hearing).

Here, both Walker's application and the State's response included affidavits, which the trial court was entitled to consider as evidence. *See* Tex. Code Crim. Proc. Ann. art. 11.072, § 6(b); *Ex parte Thompson*, 153 S.W.3d 416, 425 (Tex. Crim. App. 2005) (Cochran, J., concurring) ("[A] reviewing court will defer to the factual findings of the trial judge even when the evidence is submitted by affidavit.") (citing *Manzi v. State*, 88 S.W.3d 240, 242-44 (Tex. Crim. App. 2002)). With the accompanying affidavits, the trial court could resolve the merits of Walker's claim for ineffective assistance without the need to conduct an evidentiary hearing.

*Ex parte Walker*, 2025 Tex. App. LEXIS 2202, at **17-19. Trevino argues that *Ex parte Walker* is distinguishable because (1) Trevino's "account is affirmatively corroborated by the written plea admonishments [] which use only the constitutionally deficient 'may result' language [in explaining that if the defendant is not a U.S. citizen a plea of guilty or nolo contendere my result in deportation among other things] and by a reporter's record that contains not a single reference to immigration advice of any kind[;]" and (2) the habeas court's lack of a personal recollection of Cotlar.

Here, "the fact-finding procedure [] employed was . . . adequate for reaching reasonably correct results." *See Ex parte Davila*, 530 S.W.2d at 545. The habeas court found that Trevino did not allege any "extra-record evidence" and that no hearing was necessary. The trial court, as allowed under article 11.072, § 6(b),

22

ordered Cotlar and McLellan to file affidavits, which they did. Based on the affidavits filed in this case, as well as the admonishments, and no allegations of the necessity for "extra-record evidence," we cannot say the trial court abused its discretion in failing to hold a live hearing. *See Ex parte Walker*, 2025 Tex. App. LEXIS 2202, at **17-19; *Ex parte Rabago*, No. 14-12-00027-CR, 2012 Tex. App. LEXIS 7224, at **8-9 (Tex. App.—Houston [14th Dist.] Aug. 28, 2012, pet. ref'd) (mem. op., not designated for publication). Issue one is overruled.[4]

## Conflict-of-Interest Claim

In her second issue, Trevino argues that the habeas court abused its discretion in denying Trevino's conflict-of-interest claim. Trevino specifically argues that her guilty plea to the two felonies was the express condition for the dismissal of Camargo's case and "Cotlar simply decided that Ms. Trevino's guilt was beyond question, and there is no evidence that he made any effort to investigate defenses on Ms. Trevino's behalf, negotiate a more favorable plea, or pursue a lesser sentence." According to Trevino, the conflict was not waivable under Disciplinary Rule 1.06 because no disinterested lawyer could have reasonably believed that the joint representation would not materially affect the representation of each client. Trevino

---

[4] Because of our disposition on issue one, we need not address Trevino's request on appeal that this Court remand for an evidentiary hearing on each issue raised in her application for writ of habeas corpus.

23

argues that even in the face of the conflicting affidavits, the actual conflict of interest in the case could not be waived and the conflict had an adverse effect on her case.

When a defendant asserts that she was rendered ineffective assistance of counsel as a result of a conflict of interest, we apply the test articulated in *Cuyler*, 446 U.S. at 348-50. Where a defendant raises no objection to her attorney's representation of multiple defendants, as in this case, the defendant must demonstrate that: (1) her counsel had an actual conflict of interest, and (2) the conflict of interest adversely affected her counsel's performance at trial. *See id.* at 348.

"'[A]n "actual conflict of interest" exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing his other interests (perhaps counsel's own) to the detriment of his client's interest.'" *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007) (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)). "[A] potential conflict may become an actual conflict, but [an appellate court need not] speculate about a strategy an attorney might have pursued . . . in the absence of some showing that the potential conflict became an actual conflict." *Routier v. State*, 112 S.W.3d 554, 585 (Tex. Crim. App. 2003) (citing *James v. State*, 763 S.W.2d 776, 781 (Tex. Crim. App. 1989)). "'[U]ntil a defendant shows that [her] counsel *actively represented conflicting interests*, [she] has not established the constitutional predicate for [her]

24

claim of ineffective assistance.'" *See Acosta*, 233 S.W.3d at 355 (quoting *Cuyler*, 446 U.S. at 349-50). "To show that an actual conflict of interest adversely affected counsel's performance, the appellant must show 'that trial counsel actually acted on behalf of those other interests during the trial.'" *Perez v. State*, 352 S.W.3d 751, 755 (Tex. App.—San Antonio 2011, no pet.) (quoting *Acosta*, 233 S.W.3d at 355). "The appellant must show that [her] trial counsel 'had to forego a strategy in the appellant's trial that he would have otherwise pursued if he had not represented [a conflicting interest].'" *Id.* (quoting *Routier*, 112 S.W.3d at 586).

The record before the habeas court, in particular Cotlar's affidavit, provides sufficient evidence to support the following finding of fact by the habeas court:

> Attorney Cotlar noted that the apparent conflict was covered by a written waiver (now destroyed pursuant to his firm's file retention policy), and that in any event, the apparent or potential conflict never amounted to an actual conflict of interest. Cotlar affidavit, P. 5-6. This because, he claims, Applicant was the only individual on video to be seen selling drugs to a confidential informant, and that after a six month undercover drug investigation. He claims that the evidence of Applicant's guilt was overwhelming. Whereas the only evidence against the alleged co-defendant was that he was present when the search warrant was executed and 21 small baggies of drugs were found in Applicant's shorts. Cotlar affidavit, P. 2-6.

The habeas court also made the finding of fact that the habeas court "d[id] not believe Applicant's factual claims over the reasonable assertions Cotlar makes in his affidavit." As such, we disagree with Trevino's contention that the habeas court made no credibility finding. Here, the habeas court has resolved the habeas

25

proceedings based on a factual dispute turning on the habeas court's evaluation of the credibility of the testimony of witnesses submitted through affidavits, and this Court will not overturn the habeas court's ruling unless the applicant established that the habeas court abused its discretion in reaching its findings. *See Guerrero*, 400 S.W.3d at 583. We also do not agree with Trevino's assertion that "the habeas court never found that no actual conflict existed[.]" Cotlar explained in his affidavit why no actual conflict of interest arose, and the habeas court found Cotlar's affidavit more credible than Trevino's affidavit stating that there was an actual conflict of interest. *See Ex parte Garcia*, 353 S.W.3d at 788.; *see also Acosta*, 233 S.W.3d at 355 (quoting *Cuyler*, 446 U.S. at 349-50). We are required to defer to the credibility determinations because in article 11.072 habeas appeals the "the trial judge is the sole finder of fact[]" with respect to the resolution of fact questions. *See Guerrero*, 400 S.W.3d at 583; *Ex parte Garcia*, 353 S.W.3d at 788. On this record, we cannot say the habeas court's conclusion that Trevino failed to establish her conflict-of-interest claim was outside the zone of reasonable disagreement. *See Ex parte Gallow*, 602 S.W.3d at 608-09. We overrule issue two.

Having overruled Appellant's issues, we affirm the trial court's order.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on July 1, 2026
Opinion Delivered July 22, 2026
Do Not Publish

Before Johnson, Wright and Chambers, JJ.